IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| MATCHBOX FOOD GROUP, LLC, | : | Case No. 20-bk-17250[1] |
| | : | Chapter 11 |
| Debtor. | : | Application for Joint Administration |
| | : | Pending |

**OBJECTION OF COASTAL SUNBELT PRODUCE, LLC TO DEBTORS'
EMERGENCY MOTION FOR ENTRY OF INTERIM ORDER (I) AUTHORIZING THE
USE OF EAGLE BANK'S CASH COLLATERAL, (II) GRANTING ADEQUATE
PROTECTION PURSUANT TO 11 U.S.C. §§361 AND 363 AND
(III) SCHEDULING A FINAL HEARING**

COMES NOW Coastal Sunbelt Produce, LLC ("Coastal"), by and through undersigned counsel, to hereby object (the "Objection") to *Debtors' Emergency Motion for Entry of Interim Order (I) Authorizing the Use of Eagle Bank's Cash Collateral, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§361 and 363, and (III) Scheduling a Final Hearing* (the "Cash Collateral Motion") [Doc. 12] filed by the above-captioned Debtor on behalf of itself and its affiliated Debtors.

For the reasons set forth below, Coastal objects to the relief requested in the Cash Collateral Motion as contravening federal law and Coastal's rights to have trust assets segregated and to be paid from those non-bankruptcy estate trust assets under the Perishable Agricultural Commodities

---

[1] The same relief is sought for all of Debtor's affiliated Debtors in the following cases:  Matchbox Rockville, LLC, Case No. 20-17247; Matchbox Capitol Hill, LLC, Case No. 20-17252; Gene Pool, LLC, Case No. 20-17266; Fist MB Star, LLC, Case No. 20-17254; Caribou Hunter, LLC, Case No. 20-17255; Buttermilk, LLC, Case No. 20-17255; Blue Eagle, LLC, Case No. 20-17262; Matchbox 14th Street, LLC, Case No. 20-17263; and Hammer and a Cocktail, LLC, Case No. 20-17260.  The instant Objection also applies to the relief sought for the affiliated Debtors.

Act, 7 U.S.C. §499e(c) ("PACA").  In support of its Objection, Coastal respectfully states as follows:

## I.  BACKGROUND

1.     On August 3, 2020 (the "Petition Date"), the Debtor and its affiliates filed in this Court voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.     Debtor and its affiliates are continuing in possession of their business and property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.     Coastal is a PACA licensee which has preserved its rights as a beneficiary of the statutory trust created under PACA by placing specified language on its invoices to Debtor and its affiliates as authorized by 7 U.S.C. § 499e(c)(4).  Prior to the Petition Date, Coastal, a Maryland limited liability company, sold to and supplied Debtor and its affiliates with perishable agricultural commodities and other non-produce goods, of which the fresh produce has an aggregate principal value of $17,296.40, all of which remains unpaid and is past due, as follows:

| Total Pre-Petition Goods Sold | Non-PACA Portion | Principal Pre-Petition PACA Trust Balance |
|---|---|---|
| $  18,389.10 | $  1,092.70 | $  17,296.40** |

**Total amount does not include contract interest or attorneys' fees due.

4.     A Declaration from the Credit Manager/Accounts Receivable of Coastal, Shawna Cassady, is filed contemporaneously herewith along with Coastal's PACA license information, an itemized report of Coastal's invoices reflecting 2,000 lbs. of produce sold and delivered in a single day, an itemized report of Debtors' Account, and unpaid invoices.

5.     As set forth in the Declaration of Shawna Cassady, Debtor and its affiliates purchased in excess of $230,000.00 worth of produce in 2019 and in excess of 2,000 pounds of

2

produce on May 11, 2020, and therefore are dealers subject to license under the PACA, as well as the trust provisions of PACA.  7 C.F.R. 46.2(m) and (x); 7 U.S.C. §499e(c).

6.     On August 6, 2020, Debtor filed the Cash Collateral Motion [Doc. 12] on behalf of itself and its affiliates which omitted any mention of PACA and failed to advise the Court that Debtors have prepetition PACA trust debt, or that assets subject to the floating PACA trust are not property of the Debtor's estate.  Instead, Debtors contend that their cash on deposit in bank account and the right to receive payments are property of the Debtors' estate and may be used only with the consent of their secured lender, EagleBank, or upon order of the Bankruptcy Court.  *See, Cash Collateral Motion at pp. 4-5.*  In addition, no line item for PACA trust creditors was included in Debtors' submitted budgets.

7.     The Cash Collateral Motion seeks approval of the Debtors' budgets, and to provide adequate protection for Debtors' secured lender by continuing to make payments on Debtors' secured loans with $1,500,000 cash on hand, as well as providing EagleBank with replacement liens on the same assets as existed prepetition, but with the replacement liens for any diminution in value in the assets senior to the rights of any other creditor in the case.  *See, Proposed Order, pp. 4-5 (emphasis supplied).*

8.     Although they are separately incorporated, each of the corporate Debtors maintained a centralized cash management system of bank accounts, with Debtors' primary accounts maintained at Bank of America and Eagle Bank.  Sufficient detail has not yet been provided as to the precise purpose of each account or inter-company transfers.  While each of the Debtors maintained accounts at Bank of America and Eagle Bank that were restaurant-specific, it appears that cash sweeps were conducted regularly into the accounts of the majority owner of each Debtor, Matchbox Food Group, LLC, which managed the Matchbox restaurants and paid

3

the affiliated Debtors' expenses.  *See, Debtors' Emergency Motion for Continued Use of Cash Management Systems, pp. 4-6 [Doc. 10]*; *see also, Motion to Shorten Deadlines for Creditors to File Objections to Certain First Day Motions and to Set Expedited Hearing, p. 4 [Doc. 15].* Accordingly, as an integral and inevitable consequence of their cash sweeps and centralized cash management, it appears that commingling of Debtors' cash assets has occurred, with all such assets presumed to be subject to the PACA trust unless Debtors can prove otherwise.  As a result, all of the Debtors are subject to joint and several liability to Coastal, with the non-debtor principals of Matchbox Food Group, LLC personally liable as the PACA trustees, and any third parties who received trust assets with knowledge of the breach of PACA trusts potentially liable under a disgorgement theory.[2]

## II. OBJECTIONS

9.     Coastal objects to the Debtors' Cash Collateral Motion as being substantively prejudicial to Coastal's rights, because the Cash Collateral Motion not only fails to provide  for payment of PACA trust assets to Coastal and any similarly situated PACA trust beneficiaries in the first instance, but also fails to provide adequate protection for the diminution in value of the PACA trust beneficiary's interest in the statutory trust in the form of a set-aside or escrow equal to the total amount of Debtors' pre-petition PACA trust debt, plus interest and attorneys' fees.[3] Instead, Debtors solely focus on secured lenders' liens to hopelessly commingled trust assets in

---

[2]  Only a bona fide purchaser, who takes trust property for value and without notice, either actual or constructive, of the breach of trust, may retain PACA trust assets without liability to trust beneficiaries.  *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 605-606 (4th Cir. 2010).

[3]  *See Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 631 (11th Cir. 2004) ("…such fees and interest can be awarded as 'sums owing in connection with' perishable commodities transactions under the PACA statute.").

the Cash Collateral Motion, when the priority of the PACA trust over the secured lenders' liens is plainly evident from the PACA statute itself.  7 U.S.C. § 499e(c).

## III.    ARGUMENT

### A.  The PACA Trust

10.    The statutory PACA trust requires a produce receiver to hold in trust as a fiduciary its produce-related assets, which includes the produce itself, products derived therefrom, as well as any receivables or proceeds from the sale thereof, until full payment is made to the seller. 7 U.S.C. § 499e(c)(2).  *See generally*, *Country Best v. Christopher Ranch, LLC,* 361 F.3d 629, 632 (11th Cir. 2004) (PACA is a "'non-segregated floating trust,' which gives produce suppliers priority over banks or other creditors who may have perfected security interests in the inventory and receivables of an insolvent produce dealer"); *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990); *Nickey Gregory Co., LLC v. AgriCap, LLC,* 597 F.3d 591, 595 (4th Cir. 2010); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998); *Tom Lange Co. v. Kornblum & Co., (In re Kornblum & Co.),* 81 F.3d 280 (2d Cir. 1996); *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.,* 986 F.2d 1010 (6th Cir. 1993) (noting that assets and proceeds from produce should be held in trust until payment in full). The PACA trust provision provides that unpaid produce sellers "are placed first in line among creditors for all produce-related assets if the produce dealer declares bankruptcy." *Frio Ice,* 918 F.2d at 156.  The establishment of the trust is an unequivocal declaration that produce-derived assets are distinct and must be used to pay produce suppliers. *Produce Alliance v. Let-Us Produce,* 776 F.Supp.2d 197, 201 (E.D. Va. 2011) (quoting *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Veg Co.,* 336 F.3d 410, 413 (5th Cir. 2003).

11.    It does not matter that Debtors are separately incorporated or filed separate bankruptcy petitions.  PACA is a remedial statute and "should be given a liberal construction to effectuate its statutory purpose." *Hull Company v. Hauser Food, Inc.,* 924 F.3d 777, 781 (8th Cir.

1991).  Indeed, the federal PACA statute is co-equal with the Bankruptcy Code.  Courts should not give effect to the corporate form where it is used to work a fraud or injustice or to defeat legislative policies.  *First National City Bank v. Banco Para El Comercio Exteries de Cuba,* 462 U.S. 611, 629-30 (1983); see *Bruhn's Freezer Meats v. US Department of Agriculture,* 438 F.2d 1332, 1343 (8th Cir. 1971) (corporate entity disregarded when failure to do so would enable corporate device to be used to circumvent a statute).

### 1.  The Scope of the Trust

12.     Section 499e(c)(2) defines the *corpus* of the trust as all produce, including all inventories of food or other products derived from produce, and receivables or proceeds from the sale of produce or its products. 7 U.S.C. § 499e(c)(2).  The commingling of trust assets does not defeat the trust.  7 C.F.R. § 46.46(b).  In addition, under common law trust principles, the trust extends to any other assets, including real property, acquired from a commingled account.  *Sanzone-Palmisano Co.,* 986 F.2d at 1013; *In re Kornblum & Co., Inc.*, 81 F.3d at 286-287; *In re Atlantic Tropical Market Corp.*, 118 B.R. 139, 142-43 (Bankr. S.D. Fla. 1990).

13.     In the bankruptcy context, the Debtors have the very difficult burden of establishing which, if any, assets are *not* subject to the PACA trust.  *See Sanzone-Palmisano,* 986 F.2d at 1014; *In re Atlantic Tropical Market*, 118 B.R. at 142; *In re Richmond Produce*, 112 B.R. 364, 368 (N.D. Cal. 1990) ("The unpaid sellers are not required to trace and the trust arises immediately upon delivery.").  A PACA debtor must prove that either:  (1) no PACA trust existed when its interest was acquired; or (2) although a PACA trust existed at the time, the interest was not acquired with trust assets; or (3) although a PACA trust existed when the interest was acquired, and the interest was acquired with trust assets, all unpaid sellers of produce were paid in full prior to the transactions involving the unpaid PACA trust creditors at issue.  *In re Kornblum & Co., Inc.*, 81 F.3d at 287.

14.     The *Sanzone-Palmisano* court characterized this burden as nearly *impossible* to carry

once trust proceeds have been commingled with non-trust proceeds.

> "We hold that a purchaser, or PACA debtor, has the burden of showing that disputed assets were not acquired with proceeds from the sale of produce or produce-related assets. . . .  [I]n the conventional case, where the produce was sold at a gross profit, the proceeds were commingled in a general fund, and the general fund was used to buy more inventory, the PACA debtor will be unable to meet its burden, and the produce supplier will prevail. We believe that this is the outcome that Congress intended."

*Sanzone-Palmisano*, 986 F.2d at 1014.

15.     Thus, a PACA debtor does not meet its burden of showing that the trust is inapplicable to non-produce inventory, or other assets, merely by establishing that the other items are not produce, or that only a certain percentage of the PACA debtor's inventory consists of produce.  *Sanzone-Palmisano Co.*, 986 F.2d at 1013; *In re Kornblum & Co., Inc.*, 81 F.3d at 286-87; *In re Atlantic Tropical Market Corp.*, 118 B.R. at 142-43.

## 2.  *Full Payment Promptly Required*

16.     Congress also specifically directed that the failure to maintain the trust and make *full payment promptly* to the trust beneficiary is unlawful.  7 U.S.C. § 499b(4).  Agricultural merchants, dealers and brokers, "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[,]" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed.  7 C.F.R. § 46.46(d)(1).

## 3.  *Secured Financing Arrangements Prohibited*

17.     Furthermore, Congress stated that secured financing arrangements, in which produce proceeds are used as security and diverted from the suppliers to lenders, are against the public interest and a burden on commerce, and that the purpose of this law is to remove this burden on commerce. 7 U.S.C. § 499e(c)(1). *See also Nickey Gregory Co., LLC v. AgriCap, LLC,* 597 F.3d 591, 595 (4th

Cir. 2010); *Consumers Produce Co. v. Volante Wholesale Produce*, 16 F.3d 1374 (3d Cir. 1994); *E. Armata, Inc. v. Platinum Funding Corp.*, 887 F. Supp. 590 (S.D.N.Y. 1995); *A&J Produce Corp. v. CIT Group/Factoring, Inc.*, 829 F. Supp. 651 (S.D.N.Y. 1993).  Payment to secured lenders in advance of PACA trust creditors when the PACA trust has been breached, as established by the bankruptcy petition in this proceeding, is prohibited.  See *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d at 594 (secured lender ordered to disgorge trust assets); *A & J Produce Corp. v. Bronx Overall Economic Development Corp.*, 542 F.3d 54, 58 (2d Cir. 2008).  The Debtors simply fail to acknowledge the automatic floating trust impressed on all of their assets existing in favor of their PACA trust creditors, since the Cash Collateral Motion omits from its recitation of pre-petition indebtedness any PACA trust claims, including but not limited to Coastal's claim.

### 4. *PACA Trust Assets Are Not Property of the Estate*

18.    PACA trust assets must be set aside for distribution to trust beneficiaries. "If a buyer or receiver declares bankruptcy ..., trust assets are not to be considered part of the estate to be distributed to other creditors or sold unless all trust beneficiaries have been paid."  49 Fed. Reg. at 45738.  *See generally*, *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d at 595; *In re Long John Silver's Restaurants, Inc.*, 230 B.R. 29 (Bankr. D. Del. 1999); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bankr. C.D. Ill. 1997); *Morris Okun, Inc. v. Harry Zimmarman, Inc.*, 814 F.Supp. 346 (S.D.N.Y. 1993);  *In re Southland & Keystone*, 132 B.R. 632 (9th Cir. BAP 1991); *In re Asinelli, Inc.,* 93 B.R. 433 (M.D.N.C. 1988); *In re Carolina Produce Distributors, Inc.,* 110 B.R. 207 (W.D.N.C. 1990); *In re Fresh Approach, Inc.*, 51 B.R. 412 (Bankr. 1985); *In re Milton Poulos, Inc.,* 94 B.R. 648 (Bankr. C.D. Cal. 1988).  "That the corpus of a trust is not property of the estate is so widely accepted as to be beyond dispute." *In re Fresh Approach, Inc.,* 51 B.R. at 419.  In the

language of the Bankruptcy Code, Debtors hold no equitable interest in PACA trust assets.   11

U.S.C. § 541(d).[4]

19.    When a produce supplier is not paid, it is entitled to immediate relief in the form

of segregation and payment of trust assets.  *See Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156

(11th Cir. 1990); *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987); *In re*

*Richmond Produce Co., Inc.*, 112 B.R. 364 (N.D. Cal. 1990); *J.R. Brooks & Son v. Norman's*

*Country Market*, 98 B.R. 47, 50 (N.D. Fla. 1989); *In re Kelly Food Products, Inc.*, 204 B.R. 18

(Bankr. C.D. Ill. 1997) (debtor required to immediately pay trust assets to the PACA trust

creditors); *In re W.L. Bradley, Inc.*, 75 B.R. 505 (E.D. Pa. 1987) (automatic stay lifted and

immediate payment of trust proceeds required to the PACA trust creditors); *In re Monterey*

*House, Inc.*, 71 B.R. 244, 249 (S.D. Tex. 1986) (PACA defendant ordered to disburse unpaid

amounts held in trust, and retain remainder in segregated, interest-bearing account to be used to

pay PACA creditors' interest and attorneys' fees).  In a case such as this, where Debtors have

presumably commingled the trust assets with non-trust assets, the trust extends to all of Debtors'

inventory gained from a commingled account, *Sanzone-Palmisano Company v. M. Seaman*

*Enterprises, Inc.*, 986 F.2d 1010 (6th Cir., 1993), and to any other assets acquired with PACA

trust funds.  *In re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1996); *In re Atlantic Tropical*

*Market Corp.*, 118 B.R. 139 (Bankr. S.D. Fla. 1990).

20.    Because PACA trust assets are outside of the bankrupt's estate, PACA trust

beneficiaries "take complete priority in payment as to all the assets of the debtor, *ahead of the*

*claims of creditors who have valid security interests*, *ahead of the administrative costs and*

---

[4]    11 U.S.C. § 541(d) states in pertinent part: "Property in which the debtor holds, as of the
commencement of the case, only legal title and not an equitable interest,…becomes property of
the estate…only to the extent of the debtor's legal title to such property, but not to the extent of
any equitable interest in such property that the debtor does not hold."

*expenses incurred in [bankruptcy] court*, and ahead of all other priority and general creditors." *In re Super Spud, Inc.*, 77 B.R. 930, 932 (M.D. Fla. 1987) (emphasis added); *see In re Kennedy & Cohen, Inc.*, 612 F.2d 963, 965 (5th Cir. 1980); *see also In re Fresh Approach, Inc.,* 51 B.R. at 419; *C.H. Robinson v. Alanco Corp.*, 239 F.3d 483 (2d Cir. 2001) (payment to other creditors, including to PACA debtor's counsel, prior to payment to PACA trust creditors, is not permitted under PACA).

### B.    Objections to the Cash Collateral Motion

21.    Coastal objects to the provisions of the Cash Collateral Motion because the Budgets underlying the Motion fail to provide for payment of trust debt or for any segregation of funds for PACA trust creditors like Coastal for the continued use of their trust assets.   As explained in *In re Fresh Approach, Inc.,* 51 B.R. 412, 420-421 (N.D. Tex. 1985), Debtors cannot provide Coastal with adequate protection via replacement priority liens because Coastal is not a secured creditor.  Coastal is the owner of non-estate trust assets, which happen to be in the possession of the Debtors.  Coastal is entitled under federal law to prompt payment of the trust assets in order to meet its own fiduciary obligations under PACA.   PACA was not enacted to protect Debtors, who wish to reorganize their secured debt using non-estate trust assets, while risking an industry-wide proliferation of unpaid obligations.  *Id.* at 420.  A replacement lien, or payment over an extended period of time, is not adequate protection for trust beneficiaries like Coastal, who is entitled to prompt payment.  Similarly, Debtors have no equitable interest in the trust assets and there is no authority for allowing non-estate trust assets to be used for reorganization over the objections of the trust beneficiaries.

Finally, Debtors fail to explain how the remedial purposes of the statutory PACA trust are fulfilled by their proposal of paying over trust assets to their secured lender, and/or granting

their secured lender replacement liens that prime the rights of PACA trust beneficiaries to assets whose value may diminish during the bankruptcy.

In sum, Debtors' secured obligations, ongoing operational expenses and professional fees cannot be paid to the detriment of Debtors' PACA trust creditors.  Coastal and any similarly situated PACA beneficiaries must be paid their outstanding pre-petition PACA trust claims in full by a date certain, or in the alternative, funds sufficient to satisfy the PACA trust claims in full -- including interest and attorneys' fees -- must be set aside by Debtors.

22.      Coastal reserves the right to assert additional objections at the hearing on this matter.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Coastal Sunbelt Produce, LLC respectfully requests that this Court enter an Order (i) sustaining the Objection, (ii) denying or denying-in-part the Cash Collateral Motion to the extent it is inconsistent herewith, (iii) requiring Debtors to segregate sufficient funds to pay Coastal and all other *bona fide* PACA trust beneficiaries in full for all pre-petition and post-petition produce purchases, including contractual interest and attorneys' fees, (iv) granting to Coastal such other and further relief as the Court deems just and proper.

Respectfully submitted, this 7th day of August, 2020.

McCARRON & DIESS

By:/s/ Mary Jean Fassett_____
      Mary Jean Fassett, #08618
      4530 Wisconsin Ave., N.W.
      Suite 301
      Washington, DC 20016
      (202) 364-0400
      (202) 364-2731 (fax)
      mjf@mccarronlaw.com
      Attorneys for Coastal Sunbelt Produce, LLC

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Objection was served via the

Court's CM/ECF system this 7th day of August, 2020, to all counsel of record and the U.S.

Trustee, as follows:

Office of the US Trustee
6305 Ivy Lane, Ste. 600
Greenbelt, MD 20770
USTPRegion4.G.ECF@USDOJ.GOV
Lynn.Kohen@usdoj.gov

Janet M. Nesse, Esq.
McNamee Hosea
6411 Ivy Lane, Ste. 200
Greenbelt, MD 20770
jnesse@mhlawyers.com

Joyce A. Kuhns, Esq.
Offit Kurman, PA
300 E. Lombard Street, Ste. 2010
Baltimore, MD 21202
Jkuhns@offitkurman.com


/s/ Mary Jean Fassett
Mary Jean Fassett