Entered: October 7th, 2020
Signed: October 7th, 2020

**SO ORDERED**



**LORI S. SIMPSON**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | |
|---|---|
| **In re:** | |
| **MATCHBOX FOOD GROUP, LLC, et al.,** | **Case No. 20-17250-LSS** |
| **Debtors.** [1] | **Chapter 11** |

**ORDER (I) APPROVING AUCTION AND BIDDING PROCEDURES
IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS, (II) AUTHORIZING ENTRY INTO ASSET PURCHASE
AGREEMENT, SUBJECT TO HIGHER OR OTHERWISE BETTER
OFFERS, (III) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (IV)
SCHEDULING AUCTION AND SALE HEARING, (V) APPROVING THE
FORM AND MANNER OF SALE NOTICE, AND (VI) GRANTING RELATED RELIEF**

---

[1] The Debtors include Matchbox Food Group, LLC, case no 20-17250-LSS; Matchbox Rockville, LLC, case no. 20-17247-LSS; Matchbox Capitol Hill, LLC, case no. 20-17252-LSS; First MB Star, case no. 20-17254-LSS; Caribou Hunter, LLC, case no. 20-17255-LSS; Buttermilk, LLC, case no. 20-17257-LSS; Hammer and a Cocktail, LLC, 20-17260-LSS; Blue Eagle, LLC, 20-17262-LSS; Matchbox 14th Street, LLC, case no. 20-17263-LSS; and Gene Poole, case no. 20-17266-LSS.

Upon consideration of the motion filed by Matchbox Food Group, LLC, Matchbox Rockville, LLC, Matchbox Capitol Hill, LLC, Gene Pool, LLC, First MB Star, LLC Caribou Hunter, LLC, Buttermilk, LLC, Blue Eagle, LLC, Matchbox 14th Street, LLC and Hammer and a Cocktail, LLC (collectively the "**Debtors**"), the debtors and debtors in possession herein, Debtors' motion for, among other things, entry of an Order (i) Approving Auction and Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (ii) Authorizing Entry Into an Asset Purchase Agreement, Subject to Higher or Otherwise Better Offers, (iii) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (iv) Scheduling the Auction and Sale Hearing; (v) Approving the Form and Manner of the Sale Notice, and (vi) Granting Related Relief (the "**Motion**")[2], all as more fully set forth in the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§1408 and 1409, and due and proper notice of the Motion having been provided to the necessary parties; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and the appearances of all interested parties having been noted in the record of the Hearing; and upon the record of the Hearing; and the Court having determined that the procedural relief sought in the Motion is in the best interests of the Debtors, their creditors, and all parties in interest; and the Court having determined that the Debtors have demonstrated a compelling and sound business justification for the relief requested in the Motion, and the Court having determined that the legal

---

[2] The Motion also seeks entry of an order approving and authorizing the Debtors to sell the Acquired Assets free and clear of claims, liens and other interests, and related relief. Those aspects of the Motion are not addressed in this Order, and instead, will be addressed at the Sale Hearing. All capitalized terms used but not otherwise defined on this Order shall have the meanings ascribed to them in the Motion.

2

and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is hereby:

**FOUND AND DETERMINED THAT**

A.      The Debtors have demonstrated a compelling and sound business justification for this Court to grant the relief requested in the Motion, including, without limitation, (i) approval of the Bidding Procedures, (ii) authorization to enter into the Asset Purchase Agreement with the Thompson Hospitality Corporation ("Purchaser"), subject to higher or otherwise better offers, (iii) approval of the Breakup Fee, as provided in the Bidding Procedures, and (iv) approval of the Assignment and Assumption Procedures, under the circumstances described herein and the Motion.

B.      The relief requested in the Motion, including, without limitation, (i) approval of the Bidding Procedures (as modified herein), (ii) authorization to enter into the Asset Purchase Agreement with the Purchaser, subject to higher or otherwise better offers, (iii) approval of the Breakup Fee, as provided in the Bidding Procedures, and (iv) approval of the Assignment and Assumption Procedures (as modified herein) is subject to, in all respects, the Final Cash Collateral Order [Doc. No. 129] (the "**Final Order**") entered with respect to Debtors' use of Cash Collateral (as defined in the Final Order).  In particular, as set forth in the Final Order, EagleBank (the "**Lender**") has a properly perfected first priority security interest in substantially all of the Debtors' assets, including any sale proceeds, and the sale proceeds shall first be used to pay off all amounts due the Lender in full, including, among other things, principal, interest and fees and expenses, including all legal fees and costs of the Lender (along with Ballard Landlords Cure, if any, as described in paragraph 21 herein), subject to the Carve Out and any other

reservations as provided in the Final Order, including Coastal Sunbelt Produce, LLC's right to assert (and Debtors' right to object to) its entitlement to payment and to be paid, pursuant to Section 5(c) of the Perishable Agricultural Commodities Act, 7 U.S.C. 499e(c), from the proceeds of any sale.

C.    The Bidding Procedures, attached to this Order as **Exhibit A** (the "Bidding Procedures"), are fair, reasonable and appropriate and represent the best method for preserving the Debtor's operations and auctioning its assets.

D.    Authorizing the Debtors to enter into the Asset Purchase Agreement, subject to higher or otherwise better offers, is in the best interests of the Debtors' estates and creditors and will provide a benefit to the Debtors' estates and creditors, among others, by establishing a floor for the value of the Debtors' going concern business.

E.    The Breakup Fee is fair, reasonable and appropriate and provide a benefit to the Debtors' estates and creditors.

F.    The Initial Overbid and the Overbid Increments are fair, reasonable and appropriate and provide a benefit to the Debtors' estates and creditors.

G.    The Sale Notice, substantially in the form attached to the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Acquired Assets, the Bidding Procedures, the Auction and the Sale Hearing, and no other or further such notice is required.

H.    The Cure Notice, substantially in the form attached to the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the Designated Contracts in connection with the sale of the Acquired Assets and the related Cure Amount, and no other or further such notice is required.

4810-8818-1966.2

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED THAT**

1.        The Motion is GRANTED with respect to the relief specifically granted herein.

2.        The Bidding Procedures, including those related to payment of the Breakup Fee, are hereby approved, are incorporated herein by reference, and shall govern all bids and bid procedures relating to the Auction and Sale of the Acquired Assets. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3. The Debtors are authorized to enter into the Asset Purchase Agreement with the Purchaser, subject to higher or otherwise better offers provided, however, that the Asset Purchase Agreement is subject to, in all respects, the Final Order, and the Debtors shall only use Cash Collateral consistent with the terms of the Final Order including that any and all sale proceeds shall first be used to pay off all amounts due the Lender in full, including, among other things, principal, interest and fees and expenses, including all legal fees and costs of the Lender (along with the Ballard Landlords Cure, if any, as described in paragraph 21 herein), subject to the Carve Out and any other reservations provided in the Final Order.  Further, and notwithstanding anything in the Asset Purchase Agreement, the Consulting Fee defined in section 7.3 of the Asset Purchase Agreement shall only be used to satisfy the full amounts due to the Lender as set forth above in the event the sale proceeds are insufficient to pay the Lender in full all amounts due and owing on or before the closing date of any sale.  Moreover, and notwithstanding anything in the Asset Purchase Agreement, the Debtors' cash on hand described in section 12.3 of the Asset Purchase Agreement constitutes Cash Collateral, subject in all respects to the Final Order, and shall first be used to pay off all amounts due the Lender in full including, among other things, principal, interest and fees and expenses, including all legal fees and costs of the Lender.

4810-8818-1966.2

4.      The Breakup Fee is hereby approved and allowed as an administrative expense of the Debtors and the Debtors' estates under section 503 of the Bankruptcy Code. In the event that payment of the Breakup Fee is triggered, under the terms of the Asset Purchase Agreement or otherwise, the Breakup Fee shall be paid in the event of the Sale of all or any part of the Acquired Assets to any party other than the Purchaser, from the proceeds of such Sale, at the closing of such Sale.

5.      The Sale Notice attached to the Motion is hereby approved.

6.      The deadline for submitting a Qualified Bid in accordance with the Bidding Procedures shall be **October 14, 2020 at 5:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**").

7.      Subject to the provisions of the Bidding Procedures, the Debtors are authorized to solicit, initiate, encourage, facilitate or take any other action designed to facilitate any inquiries or proposals regarding any sale of assets, assumption of liabilities or similar transactions with third parties until the Bid Deadline.

8.      Unless the Debtors receive an additional Qualified Bid, they will not hold an Auction, and the Purchaser shall be named the Successful Bidder.  The Debtors shall file a list of Qualified Bids on **October 15, 2020**.

9.      If the Debtors receive an additional Qualified Bid (meaning at least one Qualified Bid in addition to the Purchaser's existing Qualified Bid), the Debtors shall conduct the Auction on **October 16, 2020, at 10:00 a.m. (prevailing Eastern Time) via Zoom** broadcasted from the offices of McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., 6411 Ivy Lane, Suite 200, Greenbelt MD 20770, or such later time or such other place as the Debtors shall designate in a subsequent notice to all Qualified Bidders.

4810-8818-1966.2

10.     Only Qualified Bidders may participate in the Auction. Each such Qualified Bidder participating in the Auction may be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale. The Auction may be videotaped and/or transcribed.

11.     No creditor shall be entitled to credit bid at the Auction.

12.     All bidders at the Auction shall be deemed to have consented to the Bidding Procedures and to the core jurisdiction of this Court, waived any right to a jury trial in connection with any disputes relating to the Auction, the sale and the construction and enforcement of the applicable Asset Purchase Agreement, and, except as otherwise provided in this Order and the Bidding Procedures, waived any claim for expense reimbursement or a breakup fee.

13.     Within one (1) business day after entry of this Order, the Debtors shall serve notice of the Bid Deadline and the Auction, substantially in the form attached to the Motion by first class mail on the following persons:

i. counsel to the Purchaser;

ii. counsel to all parties asserting secured claims.

iii. the Office of the United States Trustee for the District of Maryland;

iv. the Debtors' twenty (20) largest creditors or counsel for the Committee if one has been appointed and any non-debtor counterparty to a contract to be assumed under the Asset Purchase Agreement;

v. any party that has filed a notice of appearance in these cases;

vi. any party who has, within the last twelve months, expressed an interest to the Debtors in purchasing the Acquired Assets;

4810-8818-1966.2

vii. any party who the Debtors or their professionals believe would have an interest in purchasing the Acquired Assets.

14.     As soon as practicable following the determination of the Successful Bid, the Debtors shall file a notice with the Court identifying the Successful Bidder and serve such notice by telecopy, electronic mail transmission, or overnight delivery upon the following entities: (a) the Office of the United States Trustee for the District of Maryland; (b) each of the Debtors' twenty largest unsecured creditors on a consolidated basis, or counsel to the Committee if one has been appointed; (c) counsel to the Purchaser; (d) counsel to the Lender (e) all known parties that may be asserting a lien against the Acquired Assets; (f) all Qualified Bidders that have submitted a Qualified Bid; (h) all non-debtor counterparties to the Designated Contracts proposed to be assumed and assigned under the Successful Bid and their counsel (if known); and (i) all parties that have requested notice pursuant to Bankruptcy Rule 2002.

15.     The procedures for the assumption and assignment of Designated Contracts set forth below are hereby APPROVED and shall supersede and replace the assumption and assignment procedures proposed in the Motion.

16.     Within five (5) business days after entry of this Order, the Debtors will file the Cure Notice, substantially in the form attached to the Motion (the "**Cure Notice**") with the Court and serve such Cure Notice by first-class mail on the non-debtor counterparties to the Designated Contracts. The Cure Notice substantially in the form attached to the Motion is hereby approved. The Debtors reserve the right to amend, modify, or supplement the Cure Notice.

17.     On or before October 12, 2020, the Debtors shall serve via email the Adequate Assurance Information (as hereinafter defined) for the Purchaser on counsel to Congressional Plaza LLC and RPAI Ashburn Loudon LLC (the "**Ballard Landlords**") and any other

8

counterparty to a Designated Contract that makes a request for Adequate Assurance Information. Further, in the event that there is a Qualified Bidder, the Debtors shall serve the Adequate Assurance Information (as hereinafter defined) for such Qualified Bidder on counsel for the Ballard Landlords via email on the earlier of (a) 24 hours after the Qualified Bidder is determined to be a Qualified Bidder or (b) 5 pm (ET) October 13, 2020.

18.     Adequate Assurance Information is requested to include, but is not necessarily required or restricted to include, all of the following:  (a) the specific name of the bidder, the proposed tenant that will act as the assignee, and the proposed name under which the assignee intends to operate in the Premises; (b) the potential assignee's intended use for the Premises; (c) audited financial statements, tax returns, and annual reports for the proposed assignee for the past three (3) years, including all supplements or amendments thereto; (d) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projections for the locations subject to the assignment request, and any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the Leases; (e) all documents and other evidence of the potential   assignee's restaurant experience and experience operating restaurants in a shopping center; (f) a contact person for the proposed assignee that Landlords may directly contact in connection with adequate assurance of future performance; and (g) if the proposed assignee is a newly formed entity, information regarding when such entity was formed, how it will be financed or capitalized, together with evidence of any financial commitments or credit enhancements, if any, that will be offered to guaranty the performance of obligations under the leases the newly formed entity seeks to have assumed and assigned to it.

19.     Any objection to the proposed sale or the assumption and assignment of any Designated Contract identified on the Cure Notice, including, without limitation, any objection

9

to the Cure Amount set forth on the Cure Notice or to the ability of the Successful Bidder to provide adequate  assurance of future performance under such Designated Contract, must (a) be in writing, (b) set forth the basis for the objection as well as any cure amount that the objector asserts to be due (in all cases with appropriate documentation in support thereof), and (c) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of Maryland, 6500 Cherrywood Lane, Greenbelt MD 20770, and served on the following: (i) McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., 6411 Ivy Lane, Suite 200, Greenbelt MD 20770 (Attn: Janet Nesse jnesse@mhlawyers.com and Justin Fasano jfasano@mhlawyers.com); (ii) counsel to any official committee of unsecured creditors appointed in these cases (the "**Committee**"); (iii) counsel to the Lender (Attn. Erika Morabito emorabito@foley.com and Derek Wright dlwright@foley.com); (iv) counsel to the Purchaser (Attn: Paul Sweeney psweeney@yvslaw.com); and (v) counsel to the Successful Bidder, if not the Purchaser, **so as to be actually received no later than 5:00 p.m. (prevailing Eastern Time) on October 19, 2020** (the "**Assignment and Cure Objection Deadline**").

20.     To the extent that any entity does not timely object as set forth above, such entity shall be (a) forever barred from objecting to the assumption and assignment of its respective Designated Contracts identified on the Cure Notice, including, without limitation, asserting any additional cure payments or requesting additional adequate assurance of future performance, (b) deemed to have consented to the applicable Cure Amount, if any, and to the assumption and assignment of the applicable Designated Contract, (c) bound to such corresponding Cure Amount, if any, (d) deemed to have agreed that the Successful Bidder has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code, (e) deemed to have agreed that all defaults under the applicable Designated Contract

arising or continuing prior to the effective date of the assignment have been cured as a result or precondition of the assignment, such that the Successful Bidder or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment the applicable Designated Contract shall remain in full force and effect for the benefit of the Successful Bidder and such entity in accordance with its terms (except that if the Successful Bidder agrees to pay such Cure Costs over time, such outstanding Cure Costs shall remain outstanding), (f) deemed to have waived any right to terminate the applicable Designated Contract or designate an early termination date under the applicable Designated Contract as a result of any default that occurred and/or was continuing prior to the assignment date, (g) deemed to have agreed that the Debtors are not obligated under the Designated Contracts following the effective date of the assumption and assignment, and (h) deemed to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable Designated Contract.

21.     If such an objection is received timely and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing provided, however, that the Court will not hear disputes as to the Cure Amount at the Sale Hearing.  With respect to any timely filed objection to the Debtors' proposed Cure Amount (a "**Cure Objection**"), the Debtors may assume and assign the Designated Contract and no later than three (3) business days following the closing of the Sale, the Ballard Landlords shall receive the applicable Cure Amount (except for any disputed Cure Amount), if any, and an amount equal to the disputed portion of such Cure Amount shall be placed in a segregated escrow account specifically designated for holding such amounts, pending resolution of the Cure Objection (the "**Ballard Landlords Cure**").

22.     Any further order entered by this Court approving the assumption and assignment of the Ballard Landlords' Lease(s) in connection with the Sale shall provide that (i) the proposed assignee shall comply with all terms of the assumed and assigned Lease(s), including, without limitation, payment of any year-end reconciliations and adjustments for 2019 and 2020 (the "**Adjustment Amounts**"), which have not yet been billed or have not yet become due under the terms of the Leases, (ii) the Debtors or any proposed assignee, as applicable, shall be responsible for satisfaction of the Adjustment Amounts, if any, when due in accordance with the terms of the Lease(s), regardless of when such Adjustment Amounts were incurred, and (iii) with respect to indemnification obligations under the applicable Lease(s) arising from third party claims asserted in connection with the Debtors' use and occupancy of leased premises prior to assignment, the Debtors or any potential assignee shall be required to comply with all contractual obligations to indemnify and hold landlords harmless with regard to events which occurred before assumption and assignment, but which were not known to landlords as of the date of the assumption and assignment of their respective Lease(s).

23.     The Sale Hearing shall be held on **October 26, 2020 at 3:00 p.m. (prevailing Eastern Time)** at the United States Bankruptcy Court for the District of Maryland, Courtroom No. 3-E, 6500 Cherrywood Lane, Greenbelt MD 20770 by videoconference or teleconference.  For hearing access information, see www.mdb.uscourts.gov/hearings or call 410-962-2688.

24.     All objections to entry of this Order that have not been withdrawn, waived, or settled as announced to the Court at the Hearing or by stipulation filed with the Court, and all reservations of rights included in such objections, are overruled.

25.     In the event there is a conflict between this Order and the Motion or the Asset Purchase Agreement, to the extent of such conflict this Order shall control and govern.

26.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, enforcement and/or interpretation of this Order.

27.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and except as directed by the Court in this Order, may in their discretion and without further delay take any action and perform any act authorized under this Order.

28.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

**END OF ORDER**

cc:

Alan D. Eisler aeisler@e-hlegal.com, mcghamilton@gmail.com

Justin Philip Fasano jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com, dmoorehead@mhlawyers.com, tmackey@mhlawyers.com, kolivercross@mhlawyers.com

Mary Jean Fassett mjf@mccarronlaw.com

Lynn A. Kohen lynn.a.kohen@usdoj.gov

Joyce A. Kuhns jkuhns@offitkurman.com

Robert M. Marino rmmarino@rpb-law.com, rmmarino1@aol.com

Erika Lynn Morabito emorabito@foley.com

Janet M. Nesse jnesse@mhlawyers.com, jfasano@mhlawyers.com, cpalik@mhlawyers.com, jnesse@ecf.inforuptcy.com, tmackey@mhlawyers.com, dmoorehead@mhlawyers.com, kolivercross@mhlawyers.com

4810-8818-1966.2

Jeffrey M. Orenstein jorenstein@wolawgroup.com

Matthew G. Summers summersm@ballardspahr.com, branchd@ballardspahr.com, heilmanl@ballardspahr.com, mcgeoghm@ballardspahr.com, ambroses@ballardspahr.com, buhrmank@ballardspahr.com, roglenl@ballardspahr.com, zarnighiann@ballardspahr.com, carolod@ballardspahr.com

Blake Alan Surbey bsurbey@mccarronlaw.com

Paul Sweeney psweeney@yvslaw.com, jschraf@yvslaw.com, jbeckman@yvslaw.com, cadams@yvslaw.com, yvslawcmecf@gmail.com, sweeneypr39990@notify.bestcase.com, stevenslr39990@notify.bestcase.com, hopkincr39990@notify.bestcase.com, pgomez@yvslaw.com

US Trustee - Greenbelt USTPRegion04.GB.ECF@USDOJ.GOV

14

4810-8818-1966.2

**EXHIBIT A**

**IN RE MATCHBOX FOOD GROUP, LLC, *et al.***
**BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be employed in connection with the sale (the "**Transaction**") of substantially all of the assets (collectively, the "**Acquired Assets**") of Matchbox Food Group, LLC, Matchbox Rockville, LLC, Matchbox Capitol Hill, LLC, Gene Pool, LLC, First MB Star, LLC Caribou Hunter, LLC, Buttermilk, LLC, Blue Eagle, LLC, Matchbox 14th Street, LLC and Hammer and a Cocktail, LLC (collectively the "**Debtors**") as debtors and debtors-in-possession in these chapter 11 cases (the "**Cases**"), which are currently pending in the United States Bankruptcy Court for the District of Maryland (the "**Bankruptcy Court**"). The Acquired Assets to be sold and the terms and conditions upon which the Debtors contemplate consummating a sale are further described in the Asset Purchase Agreement entered into between the Debtors and Thompson Hospitality Corporation (the "**Purchaser**"). An executed copy of the Asset Purchase Agreement Sheet is attached to the motion (the "**Motion**") filed with Bankruptcy Court seeking approval of, among other things, these Bidding Procedures.

The sale of the Acquired Assets is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure. The Transaction shall also include the assumption and assignment of certain designated executory contracts and unexpired leases (collectively, the "**Designated Contracts**") under sections 363 and 365 of the Bankruptcy Code according to the process outlined below.

## A.    MARKETING BY THE DEBTORS

[The Debtors shall (a) coordinate the efforts of potential bidders in conducting their respective due diligence, (b) evaluate bids from potential bidders, (c) negotiate any bid made to acquire the Acquired Assets and assume Designated Contracts, (d) conduct an auction (the "**Auction**") if a Qualified Bid is received other than the Asset Purchase Agreement, and (e) make such other determinations as are provided in these Bidding Procedures. Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Acquired Assets, or any portion thereof, to any person who is not, in the Debtors' reasonable judgment, in consultation with their advisors and the Lender, a potential qualified bidder.

## B.    BID DEADLINE

A potential bidder that desires to make a bid shall deliver copies of its bid package by email to: (i) counsel to the Debtors, McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., 6411 Ivy Lane, Suite 200, Greenbelt MD 20770 (Attn: Janet Nesse jnesse@mhlawyers.com and Justin Fasano jfasano@mhlawyers.com); and (ii) counsel to any official committee of unsecured creditors appointed in these cases (the "Committee"), so as to be actually received on or before

**October 14, 2020 at 5:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**"), which deadline may be extended by the Debtors.  No bids submitted after the Bid Deadline shall be considered by the Debtors.

## C.    DUE DILIGENCE

Subject to a potential bidder entering into a confidentiality agreement satisfactory to the Debtors in their business judgment, the Debtors may afford any potential bidder, whom the Debtors, in consultation with their advisors and the Lender, believe has the wherewithal to close the Transaction, the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors in their discretion. The Debtors shall not be obligated to, but may, furnish access to any due diligence information of any kind after the Bid Deadline.  The Debtors shall use reasonable efforts to provide to all potential qualified bidders certain information in connection with the proposed sale and assumption and assignment of Designated Contracts, including, among other things, these proposed Bidding Procedures and the Asset Purchase Agreement. However, the Debtors' failure to deliver any such information to any potential bidders shall not affect the validity, effectiveness or finality of the final sale order. All diligence inquiries must be directed to counsel to the Debtors, McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., 6411 Ivy Lane, Suite 200, Greenbelt MD 20770 (Attn: Janet Nesse jnesse@mhlawyers.com and Justin Fasano jfasano@mhlawyers.com.

## D. BID REQUIREMENTS

A Bid will be considered a "**Qualified Bid**", and each Bidder that submits a Qualified Bid will be considered a "**Qualified Bidder**", if the Debtors, in consultation with the Lender, determine that such Bid is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors; and within one (1) business day after the Bid Deadline, the Debtors will notify each Qualified Bidder whether such party is a Qualified Bidder and shall provide the Purchaser, and all holders of contracts proposed to be assumed and assigned, with a copy of each Qualified Bid.   If any Bid is determined not to be a Qualified Bid, the Debtors will refund such Bidder's Deposit promptly after the Bid Deadline. Between the date that the Debtors notify a Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its Purchase Price, or otherwise improve the terms of the Qualified Bid during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures. The Purchaser shall be deemed a Qualified Bidder at all times, and the proposed Asset Purchase Agreement shall be a Qualified Bid.

Further, a Qualified Bid must comply with the following requirements:

a)      The bid states that the potential qualified bidder offers to purchase, in cash, the Acquired Assets and to assume liabilities and/or contracts (or offers to purchase less than all of the Acquired Assets) upon the terms and conditions that the Debtors in their business judgment, in consultation with their advisors and the Lender, reasonably determine are no less favorable to the Debtors than those set forth in the Asset Purchase Agreement;

b)      The bid includes a signed writing that the potential qualified bidder's offer is irrevocable until the selection of the Successful Bidder, provided that if such potential qualified bidder is selected as (A) the Successful Bidder, its offer shall remain irrevocable until the earlier of (i) the date the Sale Order is entered if the sale transaction with such potential qualified bidder is denied, or (ii) the date that is sixty (60) days after the Sale Hearing, or (B) the Next Best Bidder (as defined below), its offer shall remain irrevocable until the earlier of (i) the closing of the sale to the Successful Bidder, (ii) the date that is ninety (90) days after the Sale Hearing;

c)      There are no conditions precedent to the potential qualified bidder's ability to enter into a definitive enforceable agreement and that all necessary internal and shareholder approvals have been obtained prior to the Bid Deadline; and there are no conditions precedent (due diligence, financing, or otherwise) to the closing of the Transaction, other than conditions precedent consistent with those set forth in the Asset Purchase Agreement;

d)      The bid includes a duly authorized and executed copy of an asset purchase agreement (an "**Bidder Asset Purchase Agreement**"), including the purchase price for the Assets (the "**Proposed Purchase Price**"), together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the Asset Purchase Agreement and the proposed order to approve the sale by the Bankruptcy Court;

e)      The bid includes written evidence of a firm, irrevocable commitment for debt or equity financing, or other evidence of ability to consummate the proposed sale transaction, that will allow the Debtors in their business judgment, in consultation with their advisors and the Lender, to make a determination as to the bidder's financial and other capabilities to consummate the sale transaction contemplated by the Asset Purchase Agreement;

f)      The bid has value to the Debtors that is greater than or equal to (i) the $11,550,000 consideration provided by the Purchaser, plus (ii) $346,500 (the "**Breakup Fee**"), plus (iii) $550,000 (the "**Consulting Fee**"), plus (iv) $250,000 (the "**Initial Overbid**");

g)      The bidder identifies with particularity which executory contracts and unexpired leases the potential qualified bidder designates to assume, and provides details of the potential qualified bidder's proposal for the payment (or treatment) of related cure costs with respect to the Designated Contracts;

h)      The bid includes an acknowledgement and representation that the potential qualified bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Acquired Assets and Designated Contracts prior to making its bid; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets and Designated Contracts in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever,  whether express or implied (by operation of law or otherwise), regarding the Acquired Assets and Designated Contracts or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Asset Purchase Agreement; and (iv) is not entitled to and waives any right to assert a claim for any expense reimbursement, breakup fee, or similar type of payment in connection with its due diligence and bid;

i)      The bid includes evidence, in form and substance reasonably satisfactory to the Debtors, of authorization and approval from the potential qualified bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Bidder Asset Purchase Agreement, and any amendments thereto negotiated or occasioned by its participation in the Auction;

j)      The bid is accompanied by a good faith deposit in the form of a wire transfer (to the undersigned Debtors' counsel (the "**Escrow Agent**")), certified check or such other form acceptable to the Debtors, payable to the order of the Escrow Agent in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) (the "**Good Faith Deposit**"), which shall be forfeited in the event the bidder is selected as the Successful Bidder or Next Best Bidder and fails to complete the sale transaction as required;

k)      The bid shall provide all of the following Adequate Assurance Information: (a) the specific name of the bidder, the proposed tenant that will act as the assignee, and the proposed name under which the assignee intends to operate in the Premises; (b) the potential assignee's intended use for the Premises; (c) audited financial statements, tax returns, and annual reports for the proposed assignee for the past three (3) years, including all supplements or amendments thereto; (d) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projections for the locations subject to the assignment request, and any financial projections, calculations and/or pro-

4810-8818-1966.2

formas prepared in contemplation of purchasing the Leases; (e) all documents and other evidence of the potential assignee's restaurant experience and experience operating restaurants in a shopping center; (f) a contact person for the proposed assignee that Landlords may directly contact in connection with adequate assurance of future performance; and (g) if the proposed assignee is a newly formed entity, information regarding when such entity was formed, how it will be financed or capitalized, together with evidence of any financial commitments or credit enhancements, if any, that will be offered to guaranty the performance of obligations under the leases the newly formed entity seeks to have assumed and assigned to it.;

l)      The bidder commits to supplement the bid with other information reasonably requested by the Debtors before or after the Bid Deadline;

m)      The bid is received by the relevant parties set forth in the Bidding Procedures prior to the Bid Deadline; and

n)      Such bidder consents to these Bidding Procedures and to the core jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes relating to the Auction, the sale and the construction and enforcement of the applicable Asset Purchase Agreement. Such bidder consents to entry of final judgments and order by the Bankruptcy Court concerning their bid and the Auction.

The Debtors, any Committee and their professionals will review each potential qualified bid received from a potential qualified bidder to ensure that both the bid and the bidder meet the requirements set forth above. A potential qualified bid received from a potential qualified bidder that the Debtors, in consultation with the Lender and any Committee, determine meets the above requirements will be considered a "Qualified Bid" and each potential bidder that submits a Qualified Bid will be considered a "Qualified Bidder." The Debtors, in their business judgment and in consultation with the Lender and any Committee, reserve the right to reject any bid, without limitation. The Debtors shall file a list of Qualified Bids with the Court on **October 15, 2020**.

The Asset Purchase Agreement is a Qualified Bid for all purposes and the Purchaser is a Qualified Bidder for all purposes and requirements pursuant to these Bidding Procedures at all times.

The Debtors may value a Qualified Bid based upon any and all factors that the Debtors deem pertinent, including, among others, the following: (a) the Proposed Purchase Price of the Qualified Bid and the assumption of cure obligations respecting the assumption and assignment of executory contracts and unexpired leases; (b) the risks and timing associated with consummating a transaction with the Qualified Bidder; (c) the risks associated with and extent of any non-cash consideration in any Qualified Bid; (d) any excluded assets or executory contracts

or unexpired leases; (e) the Qualified Bidder's experience and finances; and (f) any other factors that the Debtors may deem relevant to the proposed transaction.

The Good Faith Deposits of all Qualified Bidders shall be held by the Escrow Agent in a separate account for the Debtors' benefit.  If a Successful Bidder fails to consummate an approved Transaction because of a breach or failure to perform on the part of such Successful Bidder, such Successful Bidder's Good Faith Deposit will be forfeited to the Debtors. Any disputes with respect to the transfer of the Good Faith Deposits shall be resolved by the Bankruptcy Court.

### E.    NO CREDIT BIDDING

No creditor shall be entitled to credit bid at the Auction.

### F.    MODIFICATIONS/RESERVATION OF RIGHTS

The Debtors may (i) determine, in their reasonable discretion, which Qualified Bid or Qualified Bids, if any, to present to the Bankruptcy Court as the highest or otherwise best offer for the Acquired Assets, (ii) reject, at any time before entry of an order of the Bankruptcy Court approving any Qualified Bid as the Successful Bid, any bid that, in the Debtors' reasonable discretion, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or these Bidding Procedures, or (c) contrary to the best interests of the Debtors and their bankruptcy estates and creditors; provided, that the Purchaser's bid and the Asset Purchase Agreement, after approval of these Bidding Procedures, may not be rejected under (a), (b), or (c) of this provision, (iii) withdraw, in their business judgment, the Motion if pursuing approval of the Motion is determined to be contrary to the best interests of the Debtors and their bankruptcy estates and creditors, and (iv) cancel, in their business judgment, the Auction and pursue an alternative transaction if such alternative transaction is determined to be in the best interests of the Debtors and their bankruptcy estates and creditors.

The Debtors may extend or alter any deadline contained in these Bidding Procedures that will better promote their receipt of higher or otherwise better offers for the Acquired Assets and Designated Contracts. These Bidding Procedures are solely for the benefit of the Debtors and their bankruptcy estates. The Debtors may waive or modify the provisions in these Bidding Procedures or adopt additional procedures as they see fit in their business judgment.

### G.    AUCTION

If the Debtors do not receive any Qualified Bids other than from the Purchaser, they will not hold an Auction and the Purchaser will be named the Successful Bidder, subject to entry of the Sale Order.

If more than one Qualified Bid has been received, the Debtors will conduct an Auction for the sale of the Acquired Assets. Prior to the Auction, the Debtors shall send a copy of all Qualified Bids to all Qualified Bidders. The Auction shall take place on **October 16, 2020, at 10:00 a.m. (prevailing Eastern Time)** via Zoom broadcasted from the offices of McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., 6411 Ivy Lane, Suite 200, Greenbelt MD 20770, or such later time or such other place as the Debtors shall designate in a subsequent notice to all Qualified Bidders. The Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Auction. The Debtors reserve the right to cancel the Auction in their reasonable discretion.

Unless otherwise ordered by the Court for cause shown, only the Purchaser and Qualified Bidders will be eligible to participate at the Auction.

Representatives of the following parties-in-interest shall be entitled to attend and observe the Auction: Debtors, counsel to any Committee, Qualified Bidders, counsel for the Purchaser, counsel to the Lender and counsel for Congressional Plaza LLC and RPAI Ashburn Loudon LLC. The Debtors, in their discretion, may deny access to the Auction to any other entity or person, including the media.

Each Qualified Bidder may be required to confirm at the commencement of and from time to time during the Auction that it has not engaged in any collusive behavior with respect to the sale of the Acquired Assets, the bidding or the Auction. Bidding at the Auction may be videotaped and/or transcribed.

The bidding shall start at the amount offered in the highest or otherwise best Qualified Bid, as determined and announced by the Debtors, in consultation with their advisors and the Lender, and will continue in increments of at least $250,000 until the bidding ceases.

Prior to the conclusion of the Auction, the Debtors, in consultation with their advisors, the Lender and any Committee, will (a) review the last bid by each of the Qualified Bidders made at the Auction on the basis of financial and contractual terms and such factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, (b) determine the highest or otherwise best bid or combination of bids for the Acquired Assets and Designated Contracts at the Auction (the "**Successful Bid**"), and (c) notify all Qualified Bidders at the Auction of the name of the Successful Bidder. The Debtors will present the Successful Bid to the Court for approval at the Sale Hearing.

After determining the Successful Bid, the Debtors may, in consultation with their advisors, the Lender and any Committee, determine which Qualified Bid is the next best bid (the "**Next Best Bid**"). The Debtors will present the Next Best Bid to the Court for Approval at the Sale Hearing. If the Successful Bidder does not close the Transaction by the date set forth in the Successful Bid or otherwise agreed to by the Debtors and the Successful Bidder, then the Debtors shall be authorized to close with the party that submitted the Next Best Bid (the "**Next Best Bidder**"), without a further court order. The party that submits the Next Best Bid shall be required to close the Transaction by the date set forth in the Next Best Bid (excusing the time

between the Auction and the date the Next Best Bidder is advised that the Debtors will seek to close under the Next Best Bid), or otherwise agreed to by the Debtors and the Next Best Bidder.

All bidders at the Auction shall be deemed to have consented to these Bidding Procedures and to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the sale and the construction and enforcement of the applicable Asset Purchase Agreement. All such bidders will have been deemed to have consented to entry of final judgments and order by the Bankruptcy Court concerning their bid and Auction.

## H.    NO ENTITLEMENT TO FEES FOR POTENTIAL BIDDERS OR QUALIFIED BIDDERS

The performance of due diligence, the tendering of a bid, the determination that a bid is a Qualified Bid or the participation of a Qualified Bidder at the Auction shall not entitle a potential qualified bidder or Qualified Bidder to any breakup, termination or similar fee or reimbursement of expenses and all potential qualified bidders and Qualified Bidders waive any right to seek a claim for substantial contribution. Notwithstanding the foregoing, the Purchaser shall be entitled to payment of the Breakup Fee as provided in the Stalking Horse Agreement and the order approving these Bidding Procedures.

## I.    RETURN OF THE GOOD FAITH DEPOSIT

The Good Faith Deposits of Qualified Bidders shall be held in escrow by the Escrow Agent. The Good Faith Deposits of all potential qualified bidders that are determined not to be Qualified Bidders shall be returned promptly by the Escrow Agent. The Good Faith Deposits of all Qualified Bidders, other than the Successful Bidder and the Next Best Bidder, shall be returned within two (2) business days after the conclusion of the Sale Hearing (as defined below).

The Good Faith Deposit of the Next Best Bidder shall be returned within two (2) business days after the consummation of the Transaction with the Successful Bidder, but in no event later than ninety (90) days after the Sale Hearing.

## J.    AS IS, WHERE IS

The Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their estates, or their agents or representatives. Except as otherwise expressly provided in these Bidding Procedures, the Asset Purchase Agreement, or any applicable Bidder Asset Purchase Agreement, each Qualified Bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Acquired Assets and Designated Contracts prior to making its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets and Designated Contracts in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by

operation of law or otherwise, regarding the Acquired Assets and Designated Contracts, or the completeness of any information provided in connection therewith.

**K.    SALE HEARING**

The Debtors will seek entry of an order from the Bankruptcy Court at a hearing (the "**Sale Hearing**") to begin on _____ 2020 at _____ **m. (prevailing Eastern Time)** to approve and authorize the Transaction with the Successful Bidder and conditionally approve the Transaction with the Next Best Bidder.